## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO:  15-CR-20362

**UNITED STATES OF AMERICA,**

> **Plaintiff,**

**v.**

**FREDY MORENO-BELTRAN,**

> **Defendant.**

_____/

### DEFENDANT, FREDY MORENO-BELTRAN'S,
### MOTION FOR DOWNWARD DEPARTURE/VARIANCE WITH
### MEMORANDUM OF LAW IN AID OF SENTENCING

**COMES NOW,** the Defendant, **FREDY MORENO-BELTRAN**, by and through his undersigned attorney, and hereby submits the following Motion for Downward Departure/Variance with Memorandum of Law in Aid of Sentencing. It is anticipated that the Government will file a 5K1.1 motion at sentencing because the Defendant assisted and cooperated, in a substantial manner, with law enforcement authorities since July 2012 during the investigation and prosecution of others involved in this conspiracy and fraud against the Export Import Bank of the United states ("Ex-Im Bank").

As such, it is respectfully requested that this Honorable Court impose a sentence that does not exceed more than one year and one day of incarceration.

This recommended sentence complies with 18 U.S.C. § 3553(a), *U.S. v. Booker*, 543 U.S. 220 (2005).   Moreover, the recommended sentence recognizes, as the majority of justices of the United States Supreme Court did in *Gall v. U.S.*, 552 U.S. 38 (2007), that a term of supervised release/probation is a "substantial restriction of freedom" and upheld a sentence of 36 months probation - - as reasonable - - even though co-defendants received sentences ranging from 30 to 35 months imprisonment[1].  In short, the recommended sentence "***is sufficient, but not greater than necessary***" to achieve the objectives of sentencing because it takes into consideration the totality of the circumstances of the crime, his substantial cooperation with law enforcement and all other relevant factors concerning Fredy Moreno-Beltran the person.

## DEFENSE RECOMMENDED SENTENCE

The appropriate sentence that would accomplish the goals of sentencing and take into consideration the totality of the circumstances, including his  cooperation, the nature and severity of the crime, Fredy's  character and lack of any criminal history, is the following sentence:

### No more than 12 months (one year) and one day incarceration

---

[1] Co-Defendant, Ricardo Beato was sentenced by Judge Gayles to one year and one day incarceration on September 25, 2015.  See DE 25 for case No.: 15-Cr-20041-Gayles; USA v. Ricardo Beato.  On August 24th, 2015, Judge Ungaro sentenced Co-Defendant Jorge Amad to 24 months incarceration.  See DE 55 and 56 for case 15-CR-20045; USA v. Jorge R. Amad.  It should be noted that the Government did not file a 5K motion and in Amad's case,  he   only plead guilty after he discovered that Fredy was ready and willing to testify for the Government.

**It is recommended that no fine shall be imposed because Fredy does not have the ability to pay a fine as correctly noted at PSR 72.  Restitution should be ordered by the Court in the amount $1, 951,643.01 to Ex-Im Bank unless the Government re-calculates or adjusts that amount.**

### FREDY MORENO BELTRAN - - THE PERSON

The Presentence Report prepared by the Probation Officer, along with the letters from his family, friends, employees, former employers and others within his community, provide a complete picture of the 43 year old, father of two young boys and repentant man  before the Court.  (*See letters in support and photos filed in this matter).*

It is an understatement to say that Fredy made a terrible choice when he falsified documents and helped others commit the crimes for which he has plead guilty and accepted responsibility.  When we speak of Fredy, the person, we want to show the Court what is the make-up of this man, aside from the instant offense.

Fredy was born in Bogota, Colombia on May 19th, 1972.  He is 43 years old and has no criminal history.  He has a very large and close family relationship with all of his siblings - - three other brothers - - his mother and father.  He has never entered the United States accept recently, and voluntarily, to assist the authorities in this case.  In 1993, when Fredy was 21 he met his common-law wife, Emilia.

Although they never formally got married, they have two handsome and loving boys - - now age 8, Jeronnimo and Jacobo, who is 5 years old. They live together and are considered a "family."   The court should note that Fredy spends a lot of time with his sons and they are very much attached to him. (*See family and friend letters as well as photos in support*). Emilia not only looks after her sons while Fredy is working, but also gets up very early to make pastries to sale. She also assists Fredy with his work when she can and does the majority of the household chores[2].

Presently, Fredy is working very hard to earn a living and pay his bills. See PSR at page 13-14; paras 63 to 72. It is a constant struggle.   He now has "*three*" jobs - - part time consultant work with telemarketing for the University of Del Tolima, marketing with his small company (Temeka SAS with 2 employees); and helping his "wife" make /sell pastries to a local store/bakery.   This third job is fairly recent. Despite his efforts and the combined efforts of his wife; his family barely earns enough to meet their monthly financial obligations. He tries to save money by renting a very small and *Spartan* house in the countryside - - just outside Bogota - -to cut back on rent. The sole family car is an is old (2006) Ford Escape, with a rebuilt transmission and it has numerous dents and scratches. Moreover, it is in constant need of mechanical repairs.   Driving up and around the

---

[2] The key point here, is even with Fredy's help; she is swamped - - without him she is going to be devastated.

mountains to get to the city is a challenging journey with this noisy car. When he is not working he spends time with his two boys or visiting his family that live in Bogota or near him in the countryside. Often, his long-time friends or family members come to visit him at his house.

As a final note, here, Fredy has fully complied with law enforcement requests since his cooperation in 2012 and all pre-trial directives from probation and the Court.  He has not violated any conditions of his release and has appeared in Court (from Bogota) when required by the Court or the Government.  The Court should note that for the past 3 1/2  years while he has been cooperating he has been living with the fear and anguish of the unknown; not just for himself but more importantly for his family - -  his wife and two young sons.

Despite that psychological toll, Fredy has continued to cooperate in every respect and to do the best he can on a daily basis to provide for his wife and family. It is a very difficult challenge and situation.  Furthermore, although he has a large family, they too are doing the best they can to sustain themselves.  In short, Fredy Moreno is not well off and neither are his parents or siblings. Any period of incarceration will be a massive strain on his entire family.  The biggest impact will be felt by his wife and two boys.

**ADVISORY GUIDELINE SENTENCE**

**Sentence Calculated in the PSR**

The PSR states that the Defendant scores a total offense level of 20 with a criminal history category of I or 33 to 41 months. That number is primarily driven by the loss amount that Fredy clearly derived very little benefit (16 points are attributed to the loss amount). In fact, he received the least amount of the proceeds as compared to other co-defendants. That loss amount or GL overstates his culpability in this offense[3].

Moreover, the PSR did not consider that Fredy's participation in the instant offense qualifies as a minor role especially in light of the new 2015 Amendments as applied to a Defendant's Mitigating Role see §3B1.2. The USSC intended to "further broaden the availability of the mitigating role adjustment" because it found that it was used too "sparingly than the commission intended." See Mitigating Role §3B1.2 2015 Amendments (effective November 1st, 2015). The USSC stated that "even if the defendant's task was central to the crime, if his overall role was limited compared to the other participants, he still may receive the

---

[3] The defense recommended sentence is also consistent with new trends in the 2015 Amendments to the Economic Crimes Guidelines that discusses "intended loss". See US Sentencing Commission 2015 Amendments that took effect on November 1st, 2015 - -prior to the instant PSR.

adjustment." USSG 3§B1.2 at Note 3. "The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." *Id*.

Here, Fredy did not organize, lead, or even control the amounts of money or make the key decisions in this case – the others did. In fact, they distributed the "money" to him after they received it into their accounts and he received the least of any co-defendant. See Note 3 as to the non-exhaustive list of factors that apply to a determination for minor role. Fredy fits into 4 of the 5 listed factors (ii-v)that are provided. As such, the total offense level should be re-adjusted to 18 and not 20.

Again, at a total offense level of 18, as mentioned in Fredy's objections (filed before the 2015 Amendments took effect), his GL range is 27-33 months. That amount should also be decreased when USSC 2§B1.1 Note 20(c), in light of the new intended loss 2015 Amendments, are also considered. To be sure, the court should adjust that number (18) with a variance as the majority of the points are driven solely by the loss amount.

Finally, and most importantly, the PSR, however, does not take into consideration that the Government will most likely file a 5k1.1 motion seeking a departure from the guidelines based on the Defendant's substantial assistance since 2012.

Fredy respectfully requests that this Court grant the Government's motion to depart from the advisory guidelines.  Moreover, the defense asks the Court to give the maximum reduction possible because an entire case was resolved (USA v. Amad) without the need for trial or even pro-tracted litigation based on Fredy's participation and cooperation.  Indeed, the Court has already been informed by the Government that his cooperation has been outstanding.

In this jurisdiction he Court must consider five factors pursuant to USSG 5K1.1(a) when the Government files a 5K1.1 motion:

(1)      the court's evaluation of the significance and usefulness of the Defendants assistance, taking into consideration the government's evaluation;

(2)      the truthfulness, completeness and reliability of any information provided by the defendant;

(3)      the nature and extent of the defendant's assistance;

(4)      any injury suffered or any danger or risk of injury to the defendant or his family resulting from the assistance;

(5)      the timeliness of the defendant's assistance.

See also *U.S. v. Pippin*, 903 F.2d 1478 (11th Cir. 1990), and *U.S. v. Livesay*, 525 F.3d 1081, 1090-92 (11th Cir. 2008)(examining the reasonableness of the ultimate sentence in light of all factors including the USSG section 5 K1.1 factors and 18

8

USC section 3553(a)); c.f. *U.S. v. Mangaroo*, 504 F.3d 1350 (11th Cir. 2007(reversing probation sentence where court failed to rely on any of these factors in sentencing the defendant far below the guidelines).  It is clear that Fredy should receive a substantial departure based on his cooperation as previously discussed.

**Determination of sentence under 18 U.S.C. § 3553(a)'s Mandate to Impose a Sentence That is Sufficient, But Not Greater Than Necessary**

The United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738, 764-65 (2005), requires the district court  to consider other factors, other than the *advisory* Sentencing Guidelines*,*  before imposing a sentence.  Indeed, now more than ever before, the Court has much more latitude in imposing a sentence ***"that is sufficient, but not greater than necessary"*** to comply with the purpose set forth in 18 U.S.C. § 3553(a).  In determining the sentence minimally sufficient to comply with the purposes of sentencing[4] the sentencing court ***shall*** consider - - "the nature and circumstance of the offense" and "the history and characteristics of the defendant"; "the kinds of sentences available"; all relevant

---

[4] Four (4) purposes of sentencing are identified: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).

guidelines and policy statements issued by the Sentencing Commission; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1), (3)-(7). Neither the statute itself nor *Booker* suggests that any one of these factors is to be given greater weight than any other factor. See *Gall v. U.S.*, 552 US 38 (2007).

When the Court considers the totality of the circumstances pursuant to 18 USC §3553(a) here: (1) the fact that Fredy is not charged with a violent crime, (2) the fact that he was the first and very early on cooperated with authorities even though he was in Bogota, Colombia, and without an attorney, (3) the fact that he did not organize, manage, lead or profit as others did from the fraud, (4) the fact that he has had to deal with the mental anguish of an unknown "punishment" for over 4 years, (5) the fact that he has never been arrested before, (6) the fact that he has two young children and his "wife" that depend on him in every manner; and (7) the fact that there are no other real sentencing alternatives to Fredy because he is not a US citizen and he does not reside in the USA - - all weigh in favor of imposing a sentence that ***is not more*** than one year and a day.

As such, a departure or variance should be made to reflect the 3553 factors for Fredy. The Court must also consider that Beato was sentence to one year and a day and Fredy has assisted the authorities for a much longer period of time.

## CONCLUSION

Indeed, if there was ever a case to impose a departure from the guidelines, as recommended by the defense here, this is the case.  It is respectfully submitted that the appropriate sentence to accomplish the goals of sentencing would be a sentence that will incorporate punishment for ___*not more than*___ one year and one day incarceration.

**WHEREFORE,** the Defendant, Fredy Moreno Beltran, respectfully submits this motion for downward departure/variance with sentencing memorandum and respectfully requests that this Court impose a sentence that is not greater than necessary and not more than one year and one day.

Respectfully submitted,

***S. PATRICK DRAY, P.A.***
Courthouse Center
40 NW Third Street
Penthouse One
Miami, FL 33128

Tel: (305) 379-4501
Fax: (786) 513-2244

11

By:  s/ S. Patrick Dray
S. PATRICK DRAY
FLORIDA BAR NO.: 0180157
pat@patdray.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 27th, 2016,  I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:    s/ S. Patrick Dray
         S. PATRICK DRAY, ESQUIRE